512 P.2d 1174 (1973)
FARMERS NATIONAL BANK, a National Banking Association, Plaintiff-Appellee,
v.
CERES LAND COMPANY, a Delaware corporation authorized to do business in Colorado, Defendant and Third-Party Plaintiff-Appellant,
v.
Richard A. HOCH, Third-Party Defendant-Appellant.
No. 72-292.
Colorado Court of Appeals, Div. I.
May 22, 1973.
Rehearing Denied June 12, 1973.
Certiorari Denied August 20, 1973.
*1175 Karowsky, Witwer & Oldenburg, Stow L. Witwer, Jr., Greeley, for plaintiff-appellee.
Sandhouse, Sandhouse & Wilson, Max A. Wilson, Sterling, for defendant and third-party plaintiff-appellant.
Anthony V. Zarlengo, Denver, for third-party defendant-appellant.
Selected for Official Publication.
COYTE, Judge.
Helzer, a tenant farmer on a farm owned by third-party defendant Hoch, financed his operations by borrowing from plaintiff bank. This borrowing was secured by a security agreement on Helzer's interest in crops grown on the farm. A financing statement was duly filed. During the summer of 1969 corn was grown and sold as ensilage. Hoch owned an undivided one-half interest and Helzer owned the other undivided one-half interest in the corn crop subject to the security interest of the bank.
In the fall of 1969 Hoch, with the approval of Helzer and the bank, sold the entire corn crop to defendant Ceres Land Company. The first check was made payable to Hoch, Helzer, and the bank, but the final payment for the corn in the amount of $7,370.55 was made payable only to Hoch, who did not pay the bank. The bank then filed suit against Ceres Land Company for one-half of the amount of the final payment, claiming that Ceres had converted the bank's interest in Helzer's corn crop. Ceres answered, contending that Hoch, in selling the corn, had acted as the bank's agent, that the bank had waived its security interest in the corn crop, and that there was no longer any identifiable proceeds except the purchase price. It then filed a third-party complaint against Hoch, contending that it had paid Hoch as the bank's agent for the corn and that he had misapplied the proceeds, and requested judgment over against Hoch in the event the court should find against it. Hoch contended in his answer that payment to an agent of the bank discharged Ceres and that, therefore, there could be no liability on the third-party complaint of Ceres against Hoch. The trial court entered judgment in favor of the bank against Ceres and then judgment over in favor of Ceres against Hoch. Both Ceres and Hoch appeal. We reverse.
Ceres contends that it paid Hoch, as agent for the bank, full value for the corn and that it is not liable to the bank. The trial court made no finding as to this claimed agency relationship. The uncontroverted testimony was that Helzer's obligation to the bank was in excess of one-half the amount of the $7,370.55 check; that Hoch discussed the sale with the president of the bank who authorized him ofwithout qualification to sell the ensilage, as did Helzer; that the bank approved of the sale after it had been made; and that Ceres purchased the corn in the form of ensilage and paid Hoch the balance of the purchase price.
C.R.S.1963, XXX-X-XXX, (the Uniform Commercial Code), provides:
"(1) `Proceeds' includes whatever is received when collateral or proceeds is *1176 sold, exchanged, collected, or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks, and the like are `cash proceeds'. All other proceeds are 'noncash proceeds'.
"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."
Under the "Official Comment 3" to the above section is the following:
"In many cases a purchaser or other transferee of collateral will take free of a security interest: in such cases the secured party's only right will be to proceeds. The transferee will take free whenever the disposition was authorized; the authorization may be contained in the security agreement or otherwise given."
Although C.R.S.1963, XXX-X-XXX, limits the situations in which certain purchasers take free of security interests, the last paragraph under "Official Comment 2" to this section provides:
"The limitations which this Section imposes on the persons who may take free of a security interest apply of course only to unauthorized sales by the debtor. If the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this Section. Section 9-306 states the right of a secured party to the proceeds of a sale, authorized or unauthorized."
When the bank consented to the sale of the corn and it was subsequently sold, it lost its lien on the corn. See 1A Bender's Uniform Commercial Code Service § 27.02(5). The evidence is clear that Ceres paid Hoch for the corn and, since the sale was authorized by the bank, Ceres would have no obligation or liability to the bank. There is no claim asserted by the bank against Hoch. Accordingly, the plaintiff's complaint should have been dismissed. Since the complaint must be dismissed, the third-party complaint must also be dismissed.
Judgments reversed.
PIERCE and SMITH, JJ., concur.